UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.: 1:21-cv-3277

MATTHEW J. HIGHT,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES COAST GUARD and Admiral KARL L. SCHULTZ, Commandant, in his official capacity,

    Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

**INTRODUCTION**

1. Captain Matthew Hight wants to earn an honest living and provide for his family by working as a ship pilot on the St. Lawrence River and Lake Ontario. The United States Coast Guard has prevented him from doing so. Judge Mehta of this district concluded that the Coast Guard did so by ignoring and misinterpreting its own regulations and ordered the Coast Guard to administer to Captain Hight the written exam required for registration as a pilot. Now that Captain Hight has passed the exam and completed the application process for registration as a pilot, the Coast Guard has continued to prevent Captain Hight from working as a pilot by sitting on

his application and refusing to give him an answer—despite being aware for years of Captain Hight's qualifications and efforts to register.

2. The Coast Guard's unreasonable delay in rendering a decision on Captain Hight's application prevents him both from earning an honest living as a pilot on the Great Lakes and from adjudicating his right to do so should his application be denied.

## PARTIES

3. Plaintiff Matthew J. Hight is a citizen and resident of Palm Beach County, Florida. Captain Hight has more than two decades of experience sailing large commercial ships and has completed the application process for registration as a pilot on Lake Ontario and the St. Lawrence River. Now, he wants a decision on his pending application.

4. Defendant U.S. Coast Guard is a federal agency headquartered in Washington, D.C. that operates under Defendant U.S. Department of Homeland Security during peacetime. The Coast Guard, through the Great Lakes Pilotage Division of its Office of Waterways and Ocean Policy, manages the processes and procedures for pilot registration on the Great Lakes, including part of the St. Lawrence River.

5. Defendant Commandant Karl L. Schultz is being sued in his official capacity as the officer responsible for the administration of the Coast Guard's Great Lakes Pilotage program and proceedings.

## JURISDICTION

6. This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 704.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because all Defendants reside in the District of Columbia.

## FACTS

### Registered Pilots are Required on the Great Lakes

8. In this context, a "pilot" is someone who takes control of a ship when it comes into port or goes through particularly challenging coastal waters. Great skill is required and serving as a pilot is considered the pinnacle of a mariner's career.

9. Under the Great Lakes Pilotage Act of 1960 (the "Act", 46 U.S.C. §§ 9301-9308), almost all vessels engaging in foreign trade on the Great Lakes and the St. Lawrence Seaway must engage a "Registered Pilot" to be aboard the ship and direct it on certain waters.

10. The shipping season on the St. Lawrence Seaway usually goes from late March to December of each year because the winter weather often renders parts of the seaway unnavigable.

11. Captain Hight wishes to serve as a Registered Pilot on the "District One" waters of the Great Lakes, which consists of the St. Lawrence River and Lake Ontario. Serving as a pilot would allow him to apply his substantial sailing experience to support his family and not be at sea for months at a time, as he was for 20 years of his career.

### The Coast Guard Regulates Pilot Registration

12. Under the Act, the Coast Guard is responsible for setting the requirements to become a Registered Pilot. 46 U.S.C. § 9303.

13. The Great Lake Pilotage Division of the Coast Guard's Office of Waterways and Ocean Policy manages the processes and procedures for pilot registration on the Great Lakes, including the St. Lawrence River and Lake Ontario.

14. The current Director of Great Lakes Pilotage (the "Director") is Todd Haviland.

15. Todd Haviland was the Director during the events described in this complaint.

## Pilot Registration Requirements

16. For an individual to qualify as a Registered Pilot, Coast Guard regulations (listed at 46 C.F.R. § 401.210(a)) require specific maritime credentials and a period of service qualified by length of time, service on particular waters, and service on particular vessels. 46 C.F.R. § 401.210(a)(1).

17. To qualify for registration as a Registered Pilot in District One of the Great Lakes, an individual must also comply with three requirements set forth in 46 C.F.R. § 401.220(b), as required by 46 C.F.R. § 401.210(a)(8).

18. The first requirement under 46 C.F.R. § 401.220(b), as applied to District One, is that an applicant pilot must complete a minimum five trips over the waters of District One in the company of a Registered Pilot, within one year of applying for registration (the "Minimum Trips Requirement"). 46 C.F.R. § 402.220(a)(1).

19. The second requirement under 46 C.F.R. § 401.220(b) is that an applicant pilot must complete a course of instruction prescribed by the association authorized to establish the pilotage pool (the "Course of Instruction").

20. The third and final requirement under 46 C.F.R. § 401.220(b) is that an applicant must satisfactorily complete a written exam prescribed by the Coast Guard (the "Written Exam").

21. Once an applicant completes the above three requirements, the voluntary pilotage pool in which the applicant qualifies for registration must "submit to the Director in writing its recommendations together with its reasons for the registration of the Applicant." 46 C.F.R. § 401.220(c).

22. Subject to the foregoing, a pilot found to be qualified shall be issued a certificate of registration valid for a term of five years and is thereby a Registered Pilot. 46 C.F.R. §§ 401.220(d), 401.110(a)(8).

23. The Director may also, when necessary to assure adequate and efficient pilotage service, issue a "temporary certificate of registration" for a period of less than one year. 46 C.F.R. § 401.220(e).

24. Other requirements for registration are not material to this litigation and will not be repeated here.

### The Saint Lawrence Seaway Pilots' Association

25. The Saint Lawrence Seaway Pilots' Association (the "Association") is the private association of Registered Pilots which forms a pilotage pool for District One and is authorized and regulated by the Coast Guard under Section 9304(a) of the Act.

26. The Association prescribes the Course of Instruction required for applicants seeking to become Registered Pilots in District One under 46 C.F.R. § 401.220(b).

27. The Association must submit to the Director of Great Lake Pilotage in writing its recommendations together with its reasons for the registration of applicants seeking registration on District One waters who have qualified for registration under 46 C.F.R. § 401.220(b).

### The Association's Training Plan

28. The Association has a two-phase "Applicant Pilot Training Plan" the Coast Guard treats as the Course of Instruction that all applicants seeking to become Registered Pilots in District One waters must complete, per 46 C.F.R. § 401.220(b).

29. The first phase, known as the "Applicant Pilot Training Phase", requires the applicant pilot to complete several trips with a Registered Pilot.

30. In the second phase, known as the "Deputy Pilot Training Phase", the Association must recommend the applicant pilot for temporary registration, and, when the phase is completed, the applicant pilot will be recommended by the Association for full registration as a U.S. Registered Pilot.

### Captain Hight's Progress to Become a Registered Pilot

31. On July 2, 2015, Captain Hight applied, for the first time, for registration as a U.S. Registered Pilot and shortly thereafter began training with the Association.

32. At the time Captain Hight applied to become a Registered Pilot, he held the necessary maritime credentials in satisfaction of 46 C.F.R. § 401.210(a)(1) (*see supra* ¶ 16).

33. By May 2016, Captain Hight had obtained the necessary experience required by 46 C.F.R. § 401.210(a)(1).

34. By December 2015, Captain Hight had satisfied the Minimum Trips Requirement described by 46 C.F.R. § 401.220(b)(1) (*see supra* ¶ 18).

35. In May 2016, Captain Hight moved onto the second phase of the Association's Applicant Pilot Training Plan.

36. On May 3, 2016, the Coast Guard issued Captain Hight a one-year temporary registration to provide pilotage services on Lake Ontario, at the Association's request.

37. Throughout the 2016 shipping season, Captain Hight completed approximately 100 solo piloting assignments on Lake Ontario under his temporary registration and continued to complete the Association's Training Plan.

38. In March 2017, the Coast Guard renewed Captain Hight's one-year temporary registration at the Association's request.

39. Throughout the 2017 shipping season, Captain Hight completed approximately 100 more solo piloting assignments on Lake Ontario under his temporary registration and continued to complete the Association's Training Plan.

40. By December 2017, Captain Hight completed the Training Plan, satisfying the Course of Instruction requirement of 46 C.F.R. § 401.220(b)(2) (*see supra* ¶ 19).

41. At this time, Captain Hight satisfied all the statutory and regulatory requirements for registration as a Registered Pilot, except the Written Exam required by 46 C.F.R. § 401.220(b)(3).

42. On January 31, 2018, the Association approved Captain Hight to buy-in to the Association.

### The Association Recommends Against Captain Hight's Registration

43. Shortly before Captain Hight was to buy-in to and join the Association, it reversed its position and sent a letter (dated March 6, 2018) to the Coast Guard stating that it did not recommend Captain Hight for registration. This was because Captain Hight had asked to see the Association's accounting reports and had criticized some of the Association's practices—though the Association gave other pretextual reasons.

44. On April 11, 2018, the Coast Guard renewed Captain Hight's *temporary* registration, though the Association prevented him from getting any piloting assignments by taking him off the list it maintains of available pilots (the "tour de role").

### Captain Hight Emails the Coast Guard

45. Captain Hight's numerous emails to the Coast Guard contesting the Association's recommendation against him were repeatedly rebuffed.

46. In an email exchange with the Coast Guard, Captain Hight—aware that he had completed all the requirements for registration except for the Written Exam—contested the Association's recommendation against him and requested that the Coast Guard administer to him the Written Exam and issue him a "full" (that is, non-temporary) certificate of registration should he pass.

### The Coast Guard Formally Denies Captain Hight's Requests

47. On July 18, 2018, the Coast Guard denied Captain Hight's request to take the Written Exam because it could not "corroborate" that Captain Hight had completed the Minimum Trips Requirement and because he had not received a positive

recommendation from the Association—which the Coast Guard maintained was necessary to qualify as a Registered Pilot.

48. On August 15, 2018, Captain Hight timely appealed the Coast Guard's determination pursuant to 46 C.F.R. § 1.03-15, contesting, among other things, the Coast Guard's determination that he had not completed the Minimum Trips Requirement and the Coast Guard's position that he must receive a positive recommendation from the Association.

49. On October 19, 2018, the Coast Guard denied Captain Hight's appeal, affirming that he had not completed the Minimum Trips Requirement and that he must receive a positive recommendation from the Association.

50. The Coast Guard concluded that Captain Hight was not eligible to take the Written Exam required by 46 C.F.R. § 401.220(b)(3) (*see supra* ¶ 20) and denied his request to do so.

**Prior Litigation**

51. In March of 2019, Captain Hight filed a lawsuit against United States Department of Homeland Security, United States Coast Guard and Admiral Karl L. Schultz, Commandant, in his official capacity, seeking declaratory and injunctive relief under the Administrative Procedure Act and the Declaratory Judgment Act.

52. Captain Hight sought, among other relief, to order Defendants to allow him to sit for the Written Exam and to issue him a Certificate of Registration if he passed.

53. By the end of August 2020, cross motions for summary judgment by Captain Hight and Defendants were fully briefed.

54. On March 18, 2021, Judge Mehta of this district issued its Memorandum Opinion on both motions for summary judgment. Judge Mehta granted Captain Hight's motion for summary judgment as to two counts and denied the Defendants motion as to those same counts. Judge Mehta declined to reach the remaining claims. *Hight v. U.S. Dep't of Homeland Sec.*, 533 F. Supp. 3d 21, 31 (D.D.C. 2021).

55. Judge Mehta concluded that Captain Hight had been and was eligible to sit for the Written Exam because the Coast Guard had misinterpreted its own regulations about the Minimum Trips Requirement and waived its argument that Captain Hight needed the positive recommendation of the Association. *Id.* at 29, 31.

56. Judge Mehta ordered the Coast Guard to administer the Written Exam to Captain Hight. *Id.* at 31.

## Captain Hight's Exam and Reapplication

57. On March 26, 2021, counsel for Captain Hight emailed counsel for Defendants requesting to schedule a time for Captain Hight's Written Exam, in accordance with Judge Mehta's order.

58. Six days later, on April 1, 2021, Defendants' counsel replied that it had forwarded the email to the Coast Guard.

59. On April 20, 2021, Defendants' counsel informed Captain Hight's counsel that the Coast Guard would contact Captain Hight to schedule the Written Exam.

60. Finally, on May 11, 2021, almost two months after Judge Mehta's order to administer the Written Exam to Captain Hight, the Coast Guard finally provided Captain

Hight's counsel the locations and dates available for Captain Hight to take the Written Exam.

61. On May 25, 2021, counsel for Captain Hight notified Todd Haviland, Director of the Great Lakes Pilotage for the Coast Guard, and Vincent Berg, also from the Coast Guard, of Captain Hight's desire to register for one of the available June exam dates.

62. On May 26, 2021, Vincent Berg notified Captain Hight's counsel that they had to contact someone else to schedule Captain Hight's exam.

63. Captain Hight subsequently registered for the June 23, 2021 exam date and on June 4, 2021, Captain Hight's counsel notified Mr. Haviland and Mr. Berg of that fact.

64. On June 22, 2021, Captain Hight's exam date for the following day was moved by the examination center to June 29, 2021.

65. Captain Hight took the Written Exam on June 29, 2021.

66. On July 6, Mr. Berg informed counsel for Captain Hight that he had passed the Written Exam and that there would be a "[l]etter to follow," presumably to inform him of his next steps to licensure.

67. On July 22, 2021, Captain Hight—never having received an answer and unsure whether his first application was still outstanding—mailed to the Coast Guard, via FedEx, a new application for registration as a pilot for District 1 of the Great Lakes.

68. By July 23, 2021, Captain Hight still had not received the letter promised by Mr. Berg two weeks prior. Counsel for Captain Hight requested an update from Mr. Berg and Mr. Haviland and provided them the FedEx tracking information for Captain Hight's application.

69. On July 23, 2021, Mr. Haviland responded that the letter promised on July 6 would be sent "in the next week or two." He also stated that he would "respond to Captain Hight's request when I receive it", in reference to his application for registration as a pilot.

70. On August 23, 2021, Captain Hight finally received the letter regarding his Written exam. The letter was predated to June 30, 2021, the day after the exam, and only said "Congratulations! On June 29, 2021, you successfully passed the Great Lakes Pilotage Written Examination." This was more than six weeks after the letter was promised and a month after Captain Hight was told it would be sent "in the next week or two".

71. On August 27, 2021, counsel for Captain Hight emailed Vincent Berg and Todd Haviland to request an update on the status of Captain Hight's application for registration as a pilot. The email stressed the importance of a prompt response so that Captain Hight could make arrangements to participate in the 2022 shipping season and also pointed out that the Administrative Procedure Act, 5 U.S.C. § 706(1), allowed judicial review of agency actions "unreasonably delayed."

72. On August 27, 2021, Mr. Haviland responded that "[t]his email acknowledges receipt of your email."

73. On October 8, 2021, Captain Hight's counsel again requested an update from Mr. Haviland on the status of Captain Hight's application for registration as a pilot. Counsel notified Mr. Haviland that Captain Hight would resort to litigation if he did not receive an answer on his application by the end of October.

74. On October 13, 2021, Mr. Haviland responded that he was "working on the response."

75. On November 1, 2021, Mr. Haviland again responded that he was "in the process of finalizing my response. I will send it to you as soon as I complete it." He noted, without further detail, that he was "dealing with an unexpected health issue."

76. On November 15, 2021, Plaintiff's counsel again requested an update from Mr. Haviland.

77. On November, 16, 2021, Mr. Haviland responded, "I am still working on my response. I hope to have a final letter completed in the next 2-3 weeks."

78. On December 6, 2021, Mr. Haviland sent another emailing stating he was "finalizing my response. I should have something to you in the next week."

79. As of filing this complaint, Mr. Haviland has not provided any further update nor has Captain Hight been notified of a decision on his application for registration as a pilot.

80. The last time Captain Hight expected a letter informing him of his registration status, Mr. Haviland said it would "follow", then that it would arrive "in a week or two", and Captain Hight ended up waiting six weeks for a one-sentence response. The current delay has been substantially longer.

**Harm to Plaintiff**

81. Captain Hight began the process to become a pilot on Lake Ontario and the St. Lawrence River in July 2015, completing years of training and work.

82. In July 2018, the Coast Guard erroneously denied Captain Hight's request to sit for the Written Exam. Captain Hight went from reasonably expecting to be registered as a pilot so that he could earn an honest living to losing his livelihood and being denied his future as a pilot. Several months later he found a new job in a different state, but now earns a salary a fraction of what he was earning and expects to earn as a pilot on the Great Lakes.

83. To vindicate his rights, Captain Hight challenged in a court of this district the Coast Guard's reasons for denying him registration as a pilot on the Great Lakes.

84. In March of this year, after years of litigation, Captain Hight prevailed. The Coast Guard was ordered to administer the Written Exam to Captain Hight.

85. Captain Hight passed the Written Exam in June of this year.

86. Captain Hight, having fully satisfied requirements for registration as a pilot on the Great Lakes, submitted his second application for registration in July of this year.

87. Now, six and a half years after beginning this process, the Coast Guard is unreasonably delaying its decision on Captain Hight's pending application. Captain Hight's qualifications for registration under the applicable law and regulations has not changed in four years, except that he has now passed the Written Exam. The Coast Guard was well aware that Captain Hight was seeking registration and has had ample time to evaluate Captain Hight's qualifications. The Coast Guard's knowledge of his qualifications is demonstrated by the fact that it has issued him three temporary one-year registrations.

88. The Coast Guard's delay is preventing Captain Hight from planning for his future. The 2022 shipping season likely begins at the end of March, or April 1 at the latest. To start the 2022 shipping season, Captain Hight must know if he has been registered as a pilot by late January to put in the needed two months' notice at his current job and make arrangements for a place to live in the Great Lakes region. Notification that he is registered as a pilot on the Great Lakes later than late January will prevent Captain Hight from beginning yet another shipping season as a pilot. Every day thereafter will delay when he could start piloting during 2022.

89. Captain Hight has six children in high school or post-secondary education that he either fully or partially supports financially. At his current job he earns a salary a fraction of what he was earning and expects to earn as a pilot on the Great Lakes. Captain Hight has been working towards this goal for six and a half years and is now being prevented from better providing for his family as a pilot by the Coast Guard's dilatory behavior.

90. While not the outcome Captain Hight hopes for, if his application is denied he needs to know promptly so that he can challenge the Coast Guard's reasons for stopping him from becoming a pilot.

91. As it stands, the Coast Guard's recalcitrance prevents Captain Hight from both working as a pilot on the Great Lakes and from challenging the Coast Guard's reasons for preventing him from doing so.

## CLAIM

**The Coast Guard is unreasonably delaying in notifying Captain Hight whether it has approved or denied his application to serve as a pilot on the Great Lakes.**

92. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 90 above.

93. "[A] pilot found to be qualified . . . shall be issued a Certificate of Registration". 46 C.F.R. § 401.220(d).

94. Pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 500–706, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "'[A]gency action' includes . . . failure to act". *Id.* § 551(13).

95. When an agency unreasonably delays required action, "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed[.]" *Id.* § 706(1).

96. The APA mandates that agencies shall provide "[p]rompt notice . . . of the denial in whole or in part of a written application . . . . Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." *Id.* § 555(e).

97. In addition, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Id.* § 555(b).

98. Defendants have a statutorily imposed duty to reach a decision on Captain Hight's application, with an eye to his convenience and necessity. If that application is to be denied, Defendants must promptly notify Captain Hight of this and provide a statement of grounds for that denial. In violation of this duty, the Defendants are unreasonably delaying providing Captain Hight notice of their decision on his application for registration as a pilot on the Great Lakes.

99. Captain Hight applied for registration as a pilot for the first time in 2015; Defendants issued Captain Hight a one-year registration as far back as 2016; he completed the Course of Instruction and thereby satisfied all statutory and regulatory requirements aside from the Written Exam in 2017; the Coast Guard was ordered to allow him sit for the Written Exam in March of this year; Captain Hight passed the Written Exam in June; and he submitted his second application for registration in July. Captain Hight meets the legal conditions for registration and Defendants are required to promptly accept or reject his application. If rejected, a statement of reasons must accompany the rejection.

100.    Defendants' violation is ongoing, as is the harm to Captain Hight. Captain Hight needs to know whether his application for registration is accepted or denied so that he can either provide notice to his current employer and arrange to serve as a pilot for the 2022 shipping season or challenge the Coast Guard's reasons for denying him registration.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue a judgment in Plaintiff's favor and

a. Issue a declaratory judgment under the Administrative Procedure Act that Defendants' inaction in response to Captain Hight's application for registration as a pilot on the Great Lakes is "unreasonably delayed," in violation of the Administrative Procedure Act;
b. Order Defendants to promptly either approve Captain Hight's application for registration as a pilot and register him or deny the application, and to immediately communicate to Captain Hight whichever decision is made;
c. Award Plaintiff reasonable costs and attorneys' fees; and
d. Grant such other relief as the Court deems appropriate.

DATED: December 15, 2021

Respectfully submitted,

/s/ Jeffery H. Redfern

| | |
|---|---|
| Robert Johnson (DC Bar No. 1013390) | Jeffrey H. Redfern (DC Bar No. 1018046) |
| INSTITUTE FOR JUSTICE | Seth Young (TX Bar No. 24120675)* |
| 16781 Chagrin Blvd., Suite 256 | INSTITUTE FOR JUSTICE |
| Shaker Heights, OH 44120 | 901 N. Glebe Rd., Suite 900 |
| Phone: (703) 682-9320 | Arlington, VA 22203 |
| Fax: (703) 682-9321 | Phone: (703) 682-9320 |
| Email: rjohnson@ij.org | Fax: (703) 682-9321 |
| | Email: jredfern@ij.org |
| | syoung@ij.org |

* Motion for admission *pro hac vice* forthcoming