## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Case No.: 1:21-cv-3277-RJL

MATTHEW J. HIGHT,
    2225 Rabbit Hollowe Circle
    Delrey Beach, FL 33445
        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
    3801 Nebraska Ave. N.W.
    Washington, D.C. 20016

UNITED STATES COAST GUARD
    2703 Martin Luther King Jr. Ave. S.E.
    Washington, D.C. 20593

and Admiral KARL L. SCHULTZ,
Commandant, in his official capacity,
    2703 Martin Luther King Jr. Ave. S.E.
    Washington, D.C. 20593
        Defendants.

---

### FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

---

### INTRODUCTION

1. Captain Matthew Hight wants to earn an honest living and provide for his family by working as a ship pilot on the St. Lawrence River and Lake Ontario. The United States Coast Guard has prevented him from doing so. Judge Mehta of this district concluded that the Coast Guard did so by ignoring and misinterpreting its own

regulations and ordered the Coast Guard to administer to Captain Hight the written exam required for registration as a pilot. Now that Captain Hight has passed the exam and completed the application process for registration as a pilot, the Coast Guard has continued to prevent Captain Hight from working as a pilot by sitting on his application and refusing to give him a final answer—despite being aware for years of Captain Hight's qualifications and efforts to register.

2. The Coast Guard's unreasonable delay in rendering a final decision on Captain Hight's application prevents him both from earning an honest living as a pilot on the Great Lakes and from adjudicating his right to do so should his application be denied.

**PARTIES**

3. Plaintiff Matthew J. Hight is a citizen and resident of Palm Beach County, Florida. Captain Hight has more than two decades of experience sailing large commercial ships and has completed the application process for registration as a pilot on Lake Ontario and the St. Lawrence River. Now, he wants a decision on his pending application.

4. Defendant U.S. Coast Guard is a federal agency headquartered in Washington, D.C. that operates under Defendant U.S. Department of Homeland Security during peacetime. The Coast Guard, through the Great Lakes Pilotage Division of its Office of Waterways and Ocean Policy, manages the processes and procedures for pilot registration on the Great Lakes, including part of the St. Lawrence River.

5.  Defendant Commandant Karl L. Schultz is being sued in his official capacity as the officer responsible for the administration of the Coast Guard's Great Lakes Pilotage program and proceedings.

## JURISDICTION

6.  This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 704.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because all Defendants reside in the District of Columbia.

## FACTS

### Registered Pilots are Required on the Great Lakes

8.  In this context, a "pilot" is someone who takes control of a ship when it comes into port or goes through particularly challenging coastal waters. Great skill is required, and serving as a pilot is considered the pinnacle of a mariner's career.

9.  Under the Great Lakes Pilotage Act of 1960 (the "Act", 46 U.S.C. §§ 9301–08), almost all vessels engaging in foreign trade on the Great Lakes and the St. Lawrence Seaway must engage a "Registered Pilot" to be aboard the ship and direct it on certain waters.

10. The shipping season on the St. Lawrence Seaway usually goes from late March to December of each year because the winter weather often renders parts of the seaway unnavigable.

11. Captain Hight wishes to serve as a Registered Pilot on the "District One" waters of the Great Lakes, which consists of the St. Lawrence River and Lake Ontario. Serving

as a pilot would allow him to apply his substantial sailing experience to support his family and take shorter trips in the continental United States, rather than travel around the world for months at a time as he did for 20 years of his career.

### The Coast Guard Regulates Pilot Registration

12. Under the Act, the Coast Guard is responsible for setting the requirements to become a Registered Pilot. 46 U.S.C. § 9303.

13. The Great Lake Pilotage Division of the Coast Guard's Office of Waterways and Ocean Policy manages the processes and procedures for pilot registration on the Great Lakes, including the St. Lawrence River and Lake Ontario.

14. The current Director of Great Lakes Pilotage (the "Director") is Todd Haviland.

15. Todd Haviland was the Director during the events described in this complaint.

16. Mike Emerson is the Director of Marine Transportation Systems for the Coast Guard.

### Pilot Registration Requirements

17. For an individual to qualify as a Registered Pilot, Coast Guard regulations (listed at 46 C.F.R. § 401.210(a)) require specific maritime credentials and a period of service qualified by length of time, service on particular waters, and service on particular vessels. 46 C.F.R. § 401.210(a)(1).

18. To qualify for registration as a Registered Pilot in District One of the Great Lakes, an individual must also comply with three requirements set forth in 46 C.F.R. § 401.220(b), as required by 46 C.F.R. § 401.210(a)(8).

19. The first requirement under 46 C.F.R. § 401.220(b), as applied to District One, is that an applicant pilot must complete a minimum five trips over the waters of District One in the company of a Registered Pilot, within one year of applying for registration (the "Minimum Trips Requirement"). 46 C.F.R. § 402.220(b)(1).

20. The second requirement under 46 C.F.R. § 401.220(b) is that an applicant pilot must complete a course of instruction prescribed by the association authorized to establish the pilotage pool (the "Course of Instruction"). 46 C.F.R. § 401.220(b)(2).

21. The third and final requirement under 46 C.F.R. § 401.220(b) is that an applicant must satisfactorily complete a written exam prescribed by the Coast Guard (the "Written Exam"). 46 C.F.R. § 401.220(b)(3).

22. Once an applicant completes the above three requirements, the voluntary pilotage pool in which the applicant qualifies for registration must "submit to the Director in writing its recommendations together with its reasons for the registration of the Applicant." 46 C.F.R. § 401.220(c).

23. Subject to the foregoing, a pilot found to be qualified shall be issued a certificate of registration valid for a term of five years and is thereby a Registered Pilot. 46 C.F.R. §§ 401.220(d), 401.110(a)(8).

24. The Director may also, when necessary to assure adequate and efficient pilotage service, issue a "temporary certificate of registration" for a period of less than one year. 46 C.F.R. § 401.220(e).

25. Other requirements for registration are not material to this litigation and will not be repeated here.

### The Saint Lawrence Seaway Pilots' Association

26. The Saint Lawrence Seaway Pilots' Association (the "Association") is the private association of Registered Pilots that forms a pilotage pool for District One and is authorized and regulated by the Coast Guard under Section 9304(a) of the Act.

27. The Association prescribes the Course of Instruction required for applicants seeking to become Registered Pilots in District One under 46 C.F.R. § 401.220(b).

28. The Association must submit to the Director of Great Lake Pilotage in writing its recommendations together with its reasons for the registration of applicants seeking registration on District One waters who have qualified for registration under 46 C.F.R. § 401.220(b).

### The Association's Training Plan

29. The Association has a two-phase "Applicant Pilot Training Plan" the Coast Guard treats as the Course of Instruction that all applicants seeking to become Registered Pilots in District One waters must complete, per 46 C.F.R. § 401.220(b).

30. The first phase, known as the "Applicant Pilot Training Phase", requires the applicant pilot to complete several trips with a Registered Pilot.

31. In the second phase, known as the "Deputy Pilot Training Phase," the Association must recommend the applicant pilot for temporary registration, and, when the phase is completed, the applicant pilot will be recommended by the Association for full registration as a U.S. Registered Pilot.

**Captain Hight's Progress to Become a Registered Pilot**

32. On July 2, 2015, Captain Hight applied, for the first time, for registration as a U.S. Registered Pilot and shortly thereafter began training with the Association.

33. At the time Captain Hight applied to become a Registered Pilot, he held the necessary maritime credentials in satisfaction of 46 C.F.R. § 401.210(a)(1) (*see supra* ¶ 17).

34. By May 2016, Captain Hight had obtained the necessary experience required by 46 C.F.R. § 401.210(a)(1).

35. By December 2015, Captain Hight had satisfied the Minimum Trips Requirement described by 46 C.F.R. § 401.220(b)(1) (*see supra* ¶ 19).

36. In May 2016, Captain Hight moved onto the second phase of the Association's Applicant Pilot Training Plan.

37. On May 3, 2016, the Coast Guard issued Captain Hight a one-year temporary registration to provide pilotage services on Lake Ontario, at the Association's request.

38. Throughout the 2016 shipping season, Captain Hight completed approximately 100 solo piloting assignments on Lake Ontario under his temporary registration and continued to complete the Association's Training Plan.

39. In March 2017, the Coast Guard renewed Captain Hight's one-year temporary registration at the Association's request.

40. Throughout the 2017 shipping season, Captain Hight completed approximately 100 more solo piloting assignments on Lake Ontario under his temporary registration and continued to complete the Association's Training Plan.

41. By December 2017, Captain Hight completed the Training Plan, satisfying the Course of Instruction requirement of 46 C.F.R. § 401.220(b)(2) (*see supra* ¶ 20).

42. At this time, Captain Hight satisfied all the statutory and regulatory requirements for registration as a Registered Pilot, except for passing the Written Exam required by 46 C.F.R. § 401.220(b)(3).

43. On January 31, 2018, the Association approved Captain Hight to buy into the Association.

**The Association Recommends Against Captain Hight's Registration**

44. Shortly before Captain Hight was to buy into and join the Association, it reversed its position and sent a letter (dated March 6, 2018) to the Coast Guard stating that it did not recommend Captain Hight for registration. This was because Captain Hight had asked to see the Association's accounting reports and had criticized some of the Association's practices—though the Association gave other pretextual reasons.

45. On April 11, 2018, the Coast Guard renewed Captain Hight's *temporary* registration, though the Association prevented him from getting any piloting assignments by taking him off the list it maintains of available pilots (the "tour de role").

**Captain Hight Emails the Coast Guard**

46. Captain Hight's numerous emails to the Coast Guard contesting the Association's recommendation against him were repeatedly rebuffed.

47. In an email exchange with the Coast Guard, Captain Hight—aware that he had completed all the requirements for registration except for the Written Exam—contested the Association's recommendation against him and requested that the Coast Guard administer to him the Written Exam and issue him a "full" (that is, non-temporary) certificate of registration should he pass.

**The Coast Guard Formally Denies Captain Hight's Requests**

48. On July 18, 2018, the Coast Guard denied Captain Hight's request to take the Written Exam because it could not "corroborate" that Captain Hight had completed the Minimum Trips Requirement and because he had not received a positive recommendation from the Association—which the Coast Guard maintained was necessary to qualify as a Registered Pilot.

49. On August 15, 2018, Captain Hight timely appealed the Coast Guard's determination pursuant to 46 C.F.R. § 1.03-15, contesting, among other things, the Coast Guard's determination that he had not completed the Minimum Trips Requirement and the Coast Guard's position that he must receive a positive recommendation from the Association.

50. On October 19, 2018, the Coast Guard denied Captain Hight's appeal, affirming that he had not completed the Minimum Trips Requirement and that he must receive a positive recommendation from the Association.

51. The Coast Guard concluded that Captain Hight was not eligible to take the Written Exam required by 46 C.F.R. § 401.220(b)(3) (*see supra* ¶ 21) and denied his request to do so.

**Prior Litigation**

52. In March 2019, Captain Hight filed a lawsuit against the United States Department of Homeland Security, the United States Coast Guard, and Admiral Karl L. Schultz, Commandant, in his official capacity, seeking declaratory and injunctive relief under the Administrative Procedure Act and the Declaratory Judgment Act.

53. Captain Hight sought, among other relief, to order Defendants to allow him to sit for the Written Exam and to issue him a Certificate of Registration if he passed.

54. By the end of August 2020, cross motions for summary judgment by Captain Hight and Defendants were fully briefed.

55. On March 18, 2021, Judge Mehta of this district issued his Memorandum Opinion on both motions for summary judgment. Judge Mehta granted Captain Hight's motion for summary judgment as to two counts and denied the Defendants' motion as to those same counts. Judge Mehta declined to reach the remaining claims. *Hight v. U.S. Dep't of Homeland Sec.*, 533 F. Supp. 3d 21, 31 (D.D.C. 2021).

56. Judge Mehta concluded that Captain Hight had been and was eligible to sit for the Written Exam because the Coast Guard had misinterpreted its own regulations about the Minimum Trips Requirement and waived its argument that Captain Hight needed the positive recommendation of the Association. *Id.* at 29, 31.

57. Judge Mehta ordered the Coast Guard to administer the Written Exam to Captain Hight. *Id.* at 31.

**Captain Hight's Exam and Reapplication**

58. On March 26, 2021, counsel for Captain Hight emailed counsel for Defendants requesting to schedule a time for Captain Hight's Written Exam, in accordance with Judge Mehta's order.

59. Six days later, on April 1, 2021, Defendants' counsel replied that it had forwarded the email to the Coast Guard.

60. On April 20, 2021, Defendants' counsel informed Captain Hight's counsel that the Coast Guard would contact Captain Hight to schedule the Written Exam.

61. Finally, on May 11, 2021, almost two months after Judge Mehta's order to administer the Written Exam to Captain Hight, the Coast Guard finally provided Captain Hight's counsel the locations and dates available for Captain Hight to take the Written Exam.

62. On May 25, 2021, counsel for Captain Hight notified Todd Haviland, Director of the Great Lakes Pilotage for the Coast Guard, and Vincent Berg, also from the Coast Guard, of Captain Hight's desire to register for one of the available June exam dates.

63. On May 26, 2021, Vincent Berg notified Captain Hight's counsel that they had to contact someone else to schedule Captain Hight's exam.

64. Captain Hight subsequently registered for the June 23, 2021 exam date and on June 4, 2021, Captain Hight's counsel notified Mr. Haviland and Mr. Berg of that fact.

65. On June 22, 2021, Captain Hight's exam date for the following day was moved by the examination center to June 29, 2021.

66. Captain Hight took the Written Exam on June 29, 2021.

67. On July 6, Mr. Berg informed counsel for Captain Hight that he had passed the Written Exam and that there would be a "[l]etter to follow," presumably to inform him of his next steps to licensure.

68. On July 22, 2021, Captain Hight—never having received an answer and unsure whether his first application was still outstanding—sent to the Coast Guard, via FedEx, a new application for registration as a pilot for District One of the Great Lakes.

69. By July 23, 2021, Captain Hight still had not received the letter promised by Mr. Berg two weeks prior. Counsel for Captain Hight requested an update from Mr. Berg and Mr. Haviland and provided them the FedEx tracking information for Captain Hight's application.

70. On July 23, 2021, Mr. Haviland responded that the letter promised on July 6 would be sent "in the next week or two." He also stated that he would "respond to Captain Hight's request when I receive it," in reference to his application for registration as a pilot.

71. On August 23, 2021, Captain Hight finally received the letter regarding his Written Exam. The letter was predated to June 30, 2021, the day after the exam, and only said, "Congratulations! On June 29, 2021, you successfully passed the Great Lakes Pilotage Written Examination." This was more than six weeks after the letter was promised and a month after Captain Hight was told it would be sent "in the next week or two".

72. On August 27, 2021, counsel for Captain Hight emailed Vincent Berg and Todd Haviland to request an update on the status of Captain Hight's application for registration as a pilot. The email stressed the importance of a prompt response so that Captain Hight could make arrangements to participate in the 2022 shipping season and also pointed out that the Administrative Procedure Act, 5 U.S.C. § 706(1), allowed judicial review of agency actions "unreasonably delayed."

73. On August 27, 2021, Mr. Haviland responded that "[t]his email acknowledges receipt of your email."

74. On October 8, 2021, Captain Hight's counsel again requested an update from Mr. Haviland on the status of Captain Hight's application for registration as a pilot. Counsel notified Mr. Haviland that Captain Hight would resort to litigation if he did not receive an answer on his application by the end of October.

75. On October 13, 2021, Mr. Haviland responded that he was "working on the response."

76. On November 1, 2021, Mr. Haviland again responded that he was "in the process of finalizing my response. I will send it to you as soon as I complete it." He noted, without further detail, that he was "dealing with an unexpected health issue."

77. On November 15, 2021, Plaintiff's counsel again requested an update from Mr. Haviland.

78. On November 16, 2021, Mr. Haviland responded, "I am still working on my response. I hope to have a final letter completed in the next 2-3 weeks."

79. On December 6, 2021, Mr. Haviland sent another emailing stating he was "finalizing my response. I should have something to you in the next week."

80. When Captain Hight did not receive anything in the next week, he filed this complaint on December 15, 2021. Later that day, Mr. Haviland contacted Captain Hight to confirm his address (to which Mr. Haviland had sent correspondence in the past).

81. On December 18, 2021, Captain Hight finally received via email a letter—dated December 15—denying his application and informing him that he could appeal the decision to the Marine Transportation System Directorate, of which Mr. Michael Emerson is the Director. The letter provided no address, deadlines, or procedural rules for the appeal. Among the grounds for the denial were reasons precluded by Judge Mehta's opinion—the Association's non-recommendation and the Minimum Trips Requirement—and retaliatory grounds alleging that Captain Hight was untruthful in his expert testimony against the Coast Guard in an unrelated court case.

82. On January 13, 2022, Captain Hight's counsel sent overnight via UPS Captain Hight's appeal of Mr. Haviland's denial of his application to Mr. Emerson, Director of the Marine Transportation System. An electronic copy was also emailed directly to Mr. Emerson, but the appendix of exhibits could not be sent by email due to the file size.

83. On January 14, 2022, UPS sent delivery confirmation to Captain Hight's counsel. That day, Mr. Emerson stated by email that he was "reviewing the appeal, but [had] not yet received the hard copy exhibits."

84. On Monday, January 24, 2022, Mr. Emerson informed Captain Hight's counsel that "[t]he package was located on Friday afternoon, and delivered to my office this morning." He also noted that he had begun his review.

85. On February 18, 2022, counsel for Captain Hight emailed Mr. Emerson to request an update on the status of Captain Hight's appeal, stressing the importance of timeliness, and received no response.

86. On February 23, 2022, counsel for Captain Hight followed up with Mr. Emerson. Mr. Emerson informed counsel that he had been out but was continuing to review the materials and did not have an estimated date for the decision. Counsel responded requesting an update when Mr. Emerson could provide one and reemphasizing the importance of timeliness to Captain Hight's situation.

87. Mr. Emerson has not communicated further with counsel, and so Captain Hight is in limbo—relying on the good graces of the Coast Guard to cease delaying its decision on his application.

**Harm to Plaintiff**

88. Captain Hight began the process to become a pilot on Lake Ontario and the St. Lawrence River in July 2015. He spent the next three years working and training for the specific job of piloting on the District One waters of the Great Lakes.

89. In July 2018, the Coast Guard erroneously denied Captain Hight's request to sit for the Written Exam. Captain Hight went from reasonably expecting to be registered as a pilot in the next few months so that he could earn a living doing the job he spent three years preparing for to losing his livelihood and being denied his future as a pilot. Several months later he found a new job in a different state, but now earns a salary that is a fraction of what he was earning and expects to earn as a pilot on the Great Lakes.

90. To vindicate his rights, Captain Hight challenged in a court of this district the Coast Guard's reasons for denying him registration as a pilot on the Great Lakes.

91. In March 2021, after years of litigation, Captain Hight prevailed. The Coast Guard was ordered to administer the Written Exam to Captain Hight.

92. Captain Hight passed the Written Exam in June 2021.

93. Captain Hight, having fully satisfied the requirements for registration as a pilot on the Great Lakes, submitted his second application for registration in July 2021.

94. After five months and multiple promises of action, Captain Hight had to resort to litigation to receive an initial answer on his application. Three days after filing a lawsuit, Captain Hight received his denial letter, which was dated the day he filed suit.

95. Now, more than two months since the delivery of his appeal to the Coast Guard, and eight months since submitting his application, Captain Hight still awaits a final decision.

96. It has been more than six and a half years since Captain Hight began this process, and the Coast Guard is unreasonably delaying its final decision on Captain Hight's pending application. Captain Hight's qualifications for registration under the applicable law and regulations have not changed in over four years, except that he has now passed the Written Exam. The Coast Guard was well aware that Captain Hight was seeking registration and has had ample time to evaluate Captain Hight's qualifications. The Coast Guard's knowledge of his qualifications is demonstrated by the fact that it has issued him three temporary one-year registrations.

97. The Coast Guard's delay, both in initially denying the application and now on appeal, is preventing Captain Hight from planning for his future. The 2022 shipping season begins in late March and will conclude at the end of the year. To work as a pilot this shipping season, Captain Hight must put in the needed two months' notice at his current job and make arrangements for a place to live in the Great Lakes region. Every day Captain Hight's application is outstanding is one less day he can work as a pilot this season or litigate the reasons why his application was denied. Much more delay in receiving his registration could eliminate entirely the 2022 season and force him to wait to work as a pilot until 2023—almost eight years after beginning the registration process. Delay in receiving a denial delays the start of potentially lengthy litigation and puts the 2023 season in jeopardy.

98. Captain Hight has six children in high school or post-secondary education that he either fully or partially supports financially. At his current job he earns a salary a fraction of what he was earning and expects to earn as a pilot on the Great Lakes.

17

Captain Hight has been working towards this goal for more than six and a half years and is now being prevented from better providing for his family as a pilot by the Coast Guard's dilatory behavior.

99. Captain Hight hopes to obtain his registration and begin piloting as soon as possible. He has completed all the requirements. Judge Mehta confirmed that Captain Hight had completed the Minimum Trips Requirement and could not be prevented from sitting for the exam. Captain Hight has passed the exam and is ready to start working as a Registered Pilot on the Great Lakes.

100.    While not the outcome Captain Hight hopes for, if his application is denied, he needs to know promptly so that he can challenge the Coast Guard's reasons for stopping him from becoming a pilot.

101.    As it stands, the Coast Guard's recalcitrance prevents Captain Hight from both working as a pilot on the Great Lakes and from challenging the Coast Guard's reasons for preventing him from doing so.

## CLAIM

**The Coast Guard is unreasonably delaying in notifying Captain Hight whether it has approved or denied his application to serve as a pilot on the Great Lakes.**

102.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 101 above.

103.    "[A] pilot found to be qualified . . . shall be issued a Certificate of Registration[.]" 46 C.F.R. § 401.220(d).

104.  Pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 500–706, "[a] person

suffering legal wrong because of agency action, or adversely affected or aggrieved

by agency action within the meaning of a relevant statute, is entitled to judicial

review thereof." 5 U.S.C. § 702. "'[A]gency action' includes . . . failure to act".

*Id.* § 551(13).

105.  When an agency unreasonably delays required action, "[t]he reviewing court

shall compel agency action unlawfully withheld or unreasonably delayed[.]" *Id.*

§ 706(1).

106.  The APA mandates that agencies shall provide "[p]rompt notice . . . of the denial

in whole or in part of a written application . . . . Except in affirming a prior denial or

when the denial is self-explanatory, the notice shall be accompanied by a brief

statement of the grounds for denial." *Id.* § 555(e).

107.  In addition, "[w]ith due regard for the convenience and necessity of the parties

or their representatives and within a reasonable time, each agency shall proceed to

conclude a matter presented to it." *Id.* § 555(b).

108.  Defendants have a statutorily imposed duty to reach a decision on Captain

Hight's application, with an eye to his convenience and necessity. If that application

is to be denied, Defendants must promptly notify Captain Hight of this and provide

a statement of grounds for that denial. In violation of this duty, the Defendants have

delayed acting on Captain Hight's application for registration as a pilot on the Great

Lakes, and they continue to delay providing him a notice of their final decision on

his appeal.

109.     Captain Hight applied for registration as a pilot for the first time in 2015;

Defendants issued Captain Hight a one-year registration as far back as 2016; he

completed the Course of Instruction and thereby satisfied all statutory and

regulatory requirements aside from the Written Exam in 2017; the Coast Guard was

ordered to allow him sit for the Written Exam in March 2021; Captain Hight passed

the Written Exam in June; and he submitted his second application for registration

in July. Captain Hight meets the legal conditions for registration, and Defendants

are required to promptly accept or reject his application. If rejected, a statement of

reasons must accompany the rejection.

110.     Defendants' violation is ongoing, as is the harm to Captain Hight. Captain Hight

needs to know whether his application for registration is accepted or denied so that

he can either provide notice to his current employer and arrange to serve as a pilot

during the 2022 shipping season, or challenge the Coast Guard's reasons for denying

him registration.

111.     After Judge Mehta ordered the Coast Guard to administer the exam to Captain

Hight in March 2021, he should have been able to promptly take that exam to

receive his registration by the end of summer 2021. Instead, the Coast Guard has

dragged its feet at every step. Now, more than a year has passed since Judge Mehta

held that the Coast Guard acted unlawfully in denying Captain Hight the right to sit

for the exam, which means that Captain Hight has missed out on an entire shipping

season. He appears to be on the verge of missing another. This delay in acting on a

single person's application goes far beyond any conceivable bounds of

reasonableness.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue a

judgment in Plaintiff's favor and:

a. Issue a declaratory judgment under the Administrative Procedure Act that Defendants' inaction in response to Captain Hight's application for registration as a pilot on the Great Lakes is "unreasonably delayed," in violation of the Administrative Procedure Act;

b. Order Defendants to promptly either approve Captain Hight's application for registration as a pilot and register him, or deny the application with a statement of reasons—and to immediately communicate to Captain Hight whichever decision is made;

c. Award Plaintiff reasonable costs and attorneys' fees; and

d. Grant such other relief as the Court deems appropriate.

DATED: March 21, 2022

Respectfully submitted,

/s/ Jeffery H. Redfern

Robert Johnson
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: rjohnson@ij.org

Jeffrey H. Redfern
Seth Young*
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jredfern@ij.org
syoung@ij.org

* Motion for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2022, I electronically submitted the **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** to the Clerk's Office using the CM/ECF System for filing.

I further certify that I have served the documents to the following non-CM/ECF participants via UPS mail:

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
    3801 Nebraska Ave. N.W.
    Washington, D.C. 20016

UNITED STATES COAST GUARD
    2703 Martin Luther King Jr. Ave. S.E.
    Washington, D.C. 20593

Admiral KARL L. SCHULTZ,
Commandant, in his official capacity,
    2703 Martin Luther King Jr. Ave. S.E.
    Washington, D.C. 20593

        /s/ Jeffrey H. Redfern
        Jeffrey H. Redfern (DC Bar No. 1018046)
        *Counsel for Plaintiff Matthew J. Hight*