# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATTHEW J. HIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 21-3277 (RJL) |
| | ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ST. LAWRENCE SEAWAY PILOTS ASSOCIATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## MEMORANDUM OPINION
September 26, 2023 [Dkt. ##28, 31, 32]

Plaintiff, Captain Matthew Hight ("Captain Hight"), brings this action against the U.S. Department of Homeland Security, the U.S. Coast Guard, and Admiral Linda Fagan in her capacity as Coast Guard Commandant (collectively, "defendants"), challenging the Coast Guard's denial of his application for full pilot registration under the Great Lakes Pilotage Act. Captain Hight alleges that this denial violates the Administrative Procedure Act ("APA") and U.S. Constitution on a half-dozen different grounds, all stemming from his dissatisfaction with the pilotage system, which relies on private business organizations to regulate and render pilotage services on the Great Lakes. After one such organization, the St. Lawrence Seaway Pilots Association, intervened as a defendant in this case, the parties and intervenor filed cross-motions for summary judgment, which are now before

this Court. For the reasons that follow, I will **GRANT** defendants' and intervenor's cross-motions for summary judgment and **DENY** Captain Hight's motion.

## BACKGROUND

### I.   Legal Framework

The Great Lakes Pilotage Act of 1960 ("Act") requires all foreign shipping vessels and U.S. vessels engaged in foreign trade to hire an American or Canadian maritime pilot to assist in navigating the difficult waters of the Great Lakes. *See* 46 U.S.C. §§ 9301–9308. To ensure this dictate is met, and "to provide for [the] efficient … rendering of pilotage services," the Act authorizes the Coast Guard to establish "pilotage pools," which are to be formed by private, "voluntary association[s] of [U.S.] registered pilots." *Id.* § 9304(a). One of these private associations is defendant-intervenor St. Lawrence Seaway Pilots Association ("SLSPA"), which operates in a region known as District One, covering the U.S. portions of Lake Ontario and the St. Lawrence River. 46 C.F.R. § 401.300(a)(1); 85 Fed. Reg. 20,088, 20,090 (Apr. 9, 2020). Pursuant to its authority under the Act, the Coast Guard certified the SLSPA to form a pilotage pool in District One, making it the exclusive American provider of pilotage services in that region. 85 Fed. Reg. at 20,090; *see also Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 513 (D.C. Cir. 2020).

Thus, to work as a pilot in District One, an individual must be a member of the SLSPA and its pilotage pool. *See Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 331–333 (D.C. Cir. 2011).[1] Separately, the prospective pilot must also be credentialed by

---

[1] Only in limited circumstances may a pilot who is not a member of the SLSPA work in District One, assuming he is registered and otherwise fully credentialed. *See* 46 C.F.R. § 401.720(b).

the Coast Guard, which is responsible for licensing and registering Great Lakes pilots, as well as establishing the conditions of their service. 46 U.S.C. § 9303(a)–(g). Most relevant here, an individual seeking full registration under the Act must meet certain "standards of competency" prescribed by Coast Guard regulations, *id.* § 9303(a), which in turn provide a bevy of requirements for would-be pilots. For starters, "[n]o person shall be registered as a [U.S.] Registered Pilot unless" he "is of good moral character and temperate habits," among other baseline qualifications. 46 C.F.R. § 401.210(a)(3). In addition, individuals pursuing "registration for waters in which a pilotage pool is authorized" must comply with three other criteria. *Id.* § 401.210(a)(8). They must:

> (1) complete[] the minimum number of trips prescribed by the Commandant over the waters for which application is made on ongoing vessels, in company with a Registered Pilot, within 1 year of date of application[;]
>
> (2) complete[] a course of instruction for Applicant Pilots prescribed by the association authorized to establish the pilotage pool[; and]
>
> (3) satisfactorily complete[] a written examination prescribed by the Commandant[.]

*Id.* § 401.220(b). For applicants like Captain Hight, "a minimum of five round trips" over the District One waters is required to fulfill the first criterion. *Id.* § 402.220(a)(1).

The regulations also contain a requirement directed toward the pilotage associations. It provides that, for each pilot seeking registration, the association "shall submit to the [Coast Guard] in writing its recommendations together with its reasons for the registration of the Applicant." *Id.* § 401.220(c). "Subject to" the association's recommendations, the applicant's satisfaction of the three criteria in paragraph (b), and all other regulatory requirements, "a pilot found to be qualified under this subpart shall be issued a Certificate

3

of Registration, valid for a term of five (5) years." *Id.* § 401.220(d).  The Coast Guard may also issue a temporary certificate of registration for a period of less than one year when "necessary to assure adequate and efficient pilotage service." *Id.* § 401.220(e).

## II.     Factual and Procedural Background

### A.     Captain Hight's Experience with the SLSPA

Captain Hight is a professional mariner with over 20 years' experience serving on maritime vessels. AR 802.  In July 2015, he applied to the Coast Guard for registration as a Great Lakes pilot in District One, where pilotage services are provided by the SLSPA. Captain Hight began his training with the SLSPA and achieved "Applicant Pilot" status in December 2015, AR 456, which carries with it certain requirements under the SLSPA's Coast Guard-approved training program.  Most of these requirements are aimed at ensuring the Applicant Pilot completes training trips across the waters of District One, AR 464–468, which include both the "undesignated" waters of Lake Ontario and the "designated" waters of the St. Lawrence River, 85 Fed. Reg. at 20,089.  All trips at this stage of the program are supervised by fully registered pilots, who are "responsible for evaluating the Applicant Pilot['s]" performance. AR 465–466.  An Applicant Pilot who completes the required training trips, enjoys an average "acceptable" rating on his evaluations, and has "not been responsible for any negative incidents or accidents" will advance to the next stage of the program—the "Deputy Pilot Training Phase." AR 468, 470.

In May 2016, the SLSPA determined that Captain Hight had completed Applicant Pilot training and recommended he be advanced to Deputy Pilot. AR 463.  Consistent with that recommendation, the Coast Guard issued Captain Hight a temporary registration under

46 C.F.R. § 401.220(e), allowing him to pilot vessels on the undesignated waters of Lake Ontario without the supervision of a registered pilot.  AR 468.  In addition to these solo trips, the training program required Captain Hight to "continue to work towards completion of the … requirements which are specific to the designated waters of the district," AR 468–469—i.e., the St. Lawrence River, which trainees are generally not permitted to pilot alone due to difficulties in navigating that waterway.  Thus, even in the Deputy Pilot phase, "trips in the designated waters" must be made "in the company of Registered Pilots," who remain responsible for evaluating a trainee's performance on those waters.  AR 468.  A Deputy Pilot who completes the required trips (on designated *and* undesignated waters), enjoys an "acceptable" rating on his evaluations, and is not "responsible for any negative incidents or accidents will be recommended for [full] registration as a U.S. Registered Pilot."  AR 469, 470.

Captain Hight served as a Deputy Pilot from May 2016 to March 2018.  During that time, he was issued multiple temporary certificates of registration by the Coast Guard and piloted almost 200 solo trips on Lake Ontario.  AR 806.  According to a log of his trips, Captain Hight also made two, one-way trips on the St. Lawrence River after becoming a Deputy Pilot, though only one of those trips was evaluated under the program.  AR 598.  At no point did Captain Hight "receive[] any negative feedback about [his] work as a pilot."  AR 806.

Yet on March 6, 2018, the SLSPA declined to endorse Captain Hight for full pilot registration and terminated his training.  AR 516–517.  In its year-end report to the Coast Guard, the SLSPA identified two incidents involving Captain Hight that led to its negative

assessment.  The first incident, in June 2017, was a tug boat accident that occurred while

the tug was helping to undock a vessel that Captain Hight was piloting; the tug sustained

serious damage and was out of service for the rest of the shipping season.  AR 516.  Captain

Hight did not report this incident, later declaring that he was not aware the accident had

happened until several days had passed and was not at fault in the first place.  AR 530.  The

second incident, in December 2017, involved a heated exchange between Captain Hight

and the "Master" of a vessel that Captain Hight was piloting, the Federal Hudson.  AR 516.

In the parties' telling, Captain Hight "raised [his] voice" at the Master to request quiet on

the bridge while performing a delicate berthing maneuver, AR 415; he and the Master later

had words about the event, with Captain Hight using profanities that purportedly offended

the "dignity of [the Master's] rank," AR 544.  In light of these two incidents, plus a

smattering of other identified problems with Captain Hight's "communication skills" and

"professionalism," the SLSPA concluded that it could "not recommend Captain Hight

continue" as a registered pilot or pilot in training.  AR 516–517.  The Coast Guard

"concur[red]" with the SLSPA's recommendation.  AR 518.

### B.    The Coast Guard's First Administrative Decision and *Hight I*

In response to the SLSPA's report, Captain Hight initiated a series of exchanges

with the SLSPA and Coast Guard over the next five months.  He requested that the Coast

Guard permit him to take the written exam contemplated by 46 C.F.R. § 401.220(b)(3) and

further requested that—upon successful completion of the exam—the Coast Guard issue

him a full, five-year certificate of registration to work as a District One pilot.  AR 528, 534.

In several email responses and, eventually, a final administrative decision, the Coast

Guard denied Captain Hight's request to sit for the exam. AR 455–459. It concluded that Captain Hight had not complied with two requirements that the Coast Guard believed must be met before the exam could be administered. First, explaining that its custom "always" has been to proctor the exam "after having received [a] recommendation by the association that oversaw the applicant's training," the Coast Guard determined that Captain Hight had not obtained the SLSPA's endorsement. AR 458. Second, it determined that Captain Hight had not met the minimum trips requirement of 46 C.F.R. § 401.220(b)(1) because, on the agency's interpretation of that regulation, none of his trips on the St. Lawrence River prior to December 22, 2015—when he became an Applicant Pilot—could "be credited toward the minimum of five round trips." AR 458. Having rested this conclusion on regulatory grounds, the Coast Guard declined to address the SLSPA's alternative argument that Captain Hight's trips should not receive credit because "they do not show the necessary evaluation required by [the SLSPA's] training plan." AR 458.

In March 2019, Captain Hight appealed the Coast Guard's decision to the federal courts. In a narrow ruling, Judge Mehta of our Court awarded summary judgment to Captain Hight, finding that neither of the agency's reasons for withholding the exam held water. *See Hight v. U.S. Dep't of Homeland Sec.* (*Hight I*), 533 F. Supp. 3d 21 (D.D.C. 2021). As for the recommendation requirement, Judge Mehta "essentially by default" entered judgment on the issue for Captain Hight, finding that the Coast Guard's briefing failed to make any substantive argument in defense of that supposed requirement. *Id.* at 30. And, with respect to the minimum trips requirement, Judge Mehta concluded that the Coast Guard had erred in discounting Captain Hight's trips prior to December 22, 2015,

since the regulations clearly provide that the "kickoff date for qualifying trips is the 'date of application.'" *Id.* at 28 (quoting 46 C.F.R. § 401.220(b)(1)). "So, if an otherwise qualifying trip took place within one year of July 2, 2015"—the date of Captain Hight's application—"it should count toward the Minimum Trips Requirement, regardless of whether … [he was] an Applicant Pilot" at the time. *Id.*

With these two holdings in hand, Judge Mehta vacated the Coast Guard's decision and ordered it to administer the exam to Captain Hight. In doing so, "the court expresse[d] no view on whether, if Plaintiff passes the pilotage examination, Plaintiff otherwise qualifies as a registered pilot for District One." *Id.* at 31; *see also id.* at 31 nn.3 & 4.

### C.   The Coast Guard's Second Administrative Decision and Present Action

In the wake of *Hight I*, the Coast Guard administered the pilotage exam to Captain Hight, who—upon passing the exam in June 2021—subsequently renewed his request for full registration as a District One pilot. AR 41–47. Six months later, the Coast Guard Director of Great Lakes Pilotage, Todd Haviland, denied Captain Hight's request, citing four reasons: incomplete training as required by 46 C.F.R. § 401.22(b)(2), unprofessional conduct, misrepresentations in a federal court proceeding, and failure to obtain a positive recommendation from the SLSPA. AR 48–50. On this last point, Director Haviland made clear that, "[b]ased upon [Captain Hight's] lack of integrity and judgement," he "would deny [his] request even with a positive endorsement" from the SLSPA. AR 50.

Captain Hight appealed Director Haviland's decision to Coast Guard headquarters, and, in June 2022, was again denied. In a six-page opinion, the Coast Guard Director of Marine Transportation System, Michael Emerson, upheld Director Haviland's denial for

largely the same few reasons:  Captain Hight "has not completed the requisite training program; he does not possess a favorable recommendation from the pilotage association; and he lacks the appropriate temperament to serve as a pilot." AR 960.

Explaining his first basis for denial, Director Emerson remarked that the agency and SLSPA "have always maintained that Captain Hight did not complete the Association's Coast Guard approved training plan, specifically for the designated waters of the Saint Lawrence River." AR 960.  Indeed, after obtaining "a limited registration allowing him to provide 'solo' pilotage services on Lake Ontario," Captain Hight "neglected his responsibility to continue his supervised training on the Saint Lawrence River," instead choosing to "maximiz[e] [his] time on Lake Ontario and the income he could earn" while doing so.  AR 961.  "This failure to complete the training plan," Director Emerson reasoned, "is especially significant because the duties, responsibilities, and expertise required of a pilot on the Saint Lawrence River vastly exceed those of a pilot operating on Lake Ontario." AR 961.  With no assurance that Captain Hight completed his training and "no evidence" otherwise that he "demonstrate[d] the proficiency and expertise required to safely solo pilot vessels" on the St. Lawrence River, Director Emerson refused to "depart from the [SLSPA's] standard training" in this regard.  AR 963.

Second, Director Emerson disagreed with Captain Hight that, following *Hight I*, the Coast Guard was "preclude[d] … from considering the SLSPA's recommendation that he not be fully registered as a pilot in [District One] waters." AR 963.  To the contrary, a "training committee's recommendation to a licensing body is standard industry practice," AR 963, and helps the Coast Guard evaluate whether a pilot "has the requisite skill and

experience to safely solo-navigate a vessel" in each district, AR 964.  The Coast Guard was therefore justified, Director Emerson concluded, in relying on "input from the SLSPA on Captain Hight's fitness to hold a full registration." AR 964.

Finally, Director Emerson felt "compelled to comment on pilot temperament" as "an additional basis for [his] decision." AR 965.  He first observed that temperament is "directly stated in [the Coast Guard's] written requirements." AR 965.  This is because the "human factor is responsible for over 80% of accidents at sea"; such qualities as "inability to cooperate" and "susceptibility to stress" carry particular risks to maritime safety.  AR 965 (internal quotation marks omitted).  For that reason, Director Emerson was troubled by "the several incidents cited in Director Haviland's denial," as well as the "increasingly antagonistic and aggressive tone of [Captain Hight's] numerous emails to [Coast Guard] staff and to [then-Commandant] Admiral Nadeau," all of which reveal that "Captain Hight does not possess the calm demeanor and professional temperament necessary to safely pilot foreign vessels." AR 965.  Accordingly, Director Emerson "den[ied] the appeal by Captain Hight" and "den[ied] his request for full registration." AR 966.

In December 2021, Captain Hight brought the present action, challenging Director Emerson's decision.[2]  His second amended complaint ("SAC"), filed July 2022, raises ten different "claims" requesting declarations that: the Coast Guard's denial is collaterally estopped by *Hight I* (Claims I and II); the SLSPA's endorsement is not required before

---

[2] Captain Hight initially submitted a Notice of Related Case [Dkt. #5], seeking to relate his newly filed action to *Hight I*.  Judge Mehta rejected this Notice, finding no relation since *Hight I* was no longer "pending on the merits," and returned the case to the pool, whence it was assigned to this Court. *See* Minute Order (Dec. 22, 2021) (quoting LCvR 57.12(a)(3)).

Captain Hight can be registered (Claim III); Captain Hight completed his training (Claim IV); the Coast Guard's decision is arbitrary and capricious (Claim V); the Coast Guard's delegation of authority to the SLSPA violates the Due Process Clause (Claim VI), the Vesting Clause of Article I (Claim VII), and the Vesting Clause of Article II (Claim VIII); and the Coast Guard's requirement that Captain Hight join the SLSPA to work as a District One pilot violates the APA (Claim IX) and First Amendment (Claim X).  SAC [Dkt. #18-1] ¶¶ 229–315.  Based on these claims for declaratory relief, Captain Hight seeks an order from this Court directing the Coast Guard to issue full registration to Captain Hight, as well as attorneys' fees and "other relief as the Court deems appropriate." *Id.* at 55.

After the SLSPA intervened in this case, Captain Hight, defendants, and the SLSPA all filed cross-motions for summary judgment on the claims in the SAC.  *See* Pl.'s Mot. Summ. J. [Dkt. #28] ("Pl.'s Mot."); SLSPA's Cross-Mot. Summ. J. & Opp'n [Dkt. #31]; Mem. Supp. Defs.' Cross-Mot. Summ. J. & Opp'n [Dkt. #32-1] ("Defs.' Mot."); Pl.'s Opp'n to Defs.' Cross-Mot. Summ. J. & Reply [Dkt. #36] ("Pl.'s Opp'n to Defs.' Mot."); Pl.'s Opp'n to SLSPA's Cross-Mot. Summ. J. & Reply [Dkt. #38] ("Pl.'s Opp'n to SLSPA's Mot."); Defs.' Reply Supp. Cross-Mot. Summ. J. [Dkt. #41] ("Defs.' Reply"); SLSPA's Reply Supp. Cross-Mot. Summ. J. [Dkt. #42].  The parties' and SLSPA's cross-motions are now ripe for review.

## LEGAL STANDARD

While, normally, Federal Rule of Civil Procedure 56 governs the Court's review of a motion for summary judgment, "the standard set forth in Rule 56[] does not apply" in cases challenging agency action "because of the limited role of a court in reviewing the

administrative record." *Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

Instead, "[s]ummary judgment is … the mechanism for deciding whether as a matter of

law the agency action is supported by the administrative record and is otherwise consistent

with the APA standard of review." *Id.* In turn, the APA allows a court to overturn agency

action only if it is arbitrary, capricious, or otherwise contrary to law. 5 U.S.C. § 706(2).

Under this "deferential" standard, a "court simply ensures that the agency has acted within

a zone of reasonableness and, in particular, has reasonably considered the relevant issues

and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 141 S. Ct.

1150, 1158 (2021). In cases—like this one—implicating "the Coast Guard's expertise in

maritime safety," even "greater-than-normal deference is owed" to the agency's decision.

*Am. Great Lake Ports Ass'n v. U.S. Coast Guard*, 443 F. Supp. 3d 44, 52 (D.D.C. 2020)

(internal quotation marks and ellipses omitted). My scope of review is therefore "narrow,

and the Court may not substitute its own judgment for that of the [agency]." *Ameren Ill.*

*Co. v. Fed. Energy Regul. Comm'n*, 58 F.4th 501, 505 (D.C. Cir. 2023) (internal quotation

marks and brackets omitted).

## DISCUSSION

Captain Hight raises numerous objections to the Coast Guard's decision denying

him registration as a Great Lakes pilot. Most of his objections take aim at the three reasons

for Director Emerson's denial, with Captain Hight arguing that none of those reasons—

incomplete training, the SLSPA's negative recommendation, and poor temperament—

withstand scrutiny under *Hight I*, the APA, the U.S. Constitution, or all of the above

(Claims I–VIII). In his last couple of objections, Captain Hight insists the Coast Guard's

interpretation of the Act to require that a pilot join the SLSPA before he can work in District One is both unreasonable under the APA and unlawful under the First Amendment (Claims IX–X).

The Court need not reach Captain Hight's last two objections, which would "only become[] ripe" if the Court decided, contrary to the Coast Guard's conclusion, that Captain Hight "qualifie[d] as a registered pilot," *Hight I*, 533 F. Supp. 3d at 31 n.3—which I do not. The remaining challenges are addressed below.

## I.      Captain Hight's Training (Claims I, IV, V)

### A.      The Coast Guard is not precluded from resting its denial on Captain Hight's incomplete training.

Captain Hight first argues that Judge Mehta's ruling in *Hight I* precludes the Coast Guard from basing its decision on Captain Hight's failure to complete his training on the St. Lawrence River. He asserts that *Hight I* already resolved that question when Judge Mehta determined that Captain Hight had fulfilled the minimum trips requirement of 46 C.F.R. § 401.220(b)(1), which demands, as a matter of regulation, that Captain Hight complete at least five round trips on the waters of District One within one year of his application. According to Captain Hight, he met this regulatory requirement: A log of his trips shows that he "took 12.5 round trips on the St. Lawrence River" from July 2015 to March 2017, "with almost all being before May 2016." Pl.'s Mot. 11 (citing AR 588).

Captain Hight may be correct about what his trips log shows.[3] But his issue

---

[3] In fact, defendants and the SLSPA disagree with Captain Hight's tally of "12.5 round trips" on the St. Lawrence River, pointing out that many of his trips were only partial trips, i.e., from Cape Vincent to Iroquois, rather than from Cape Vincent to Snell. The Court need not wade into this dispute, however,

preclusion argument is wrong at least twice over.  To begin with, Judge Mehta did not decide that Captain Hight had satisfied the minimum trips requirement of Section 401.220(b)(1).  He decided—and the parties litigated—"[o]nly the fourth prerequisite" of that provision, which dealt with a narrow timing issue.  *Hight I*, 533 F. Supp. 3d at 29.  Had the Coast Guard's subsequent decision rested on any of the provision's other prerequisites, it would have been fair game after *Hight I*, which did not address much less determine whether Captain Hight had satisfied the remaining components of Section 401.220(b)(1).

But in fact, the Coast Guard's basis for denying Captain Hight registration was not Section 401.220(b)*(1)* at all.  It was his failure to complete the SLSPA's training program as required by Section 401.220(b)*(2)*.  *See* AR 960 ("Captain Hight did not complete the Association's Coast Guard approved training plan[.]"); *accord* AR 48 ("You did not complete the [SLSPA] Training Program, which is one of the requirements to become a United States Registered Pilot … [under] 46 CFR § 401.220(b)(2)[].").  *Hight I* is silent on Section 401.220(b)*(2)*—except, indeed, to observe that it is "separate[]" from the minimum trips requirement, *Hight I*, 533 F. Supp. 3d at 29, and that Captain Hight's compliance with the SLSPA's training plan is a subject on which "[t]he court takes no position," *id.* at 31 & n.4.  Since issue preclusion only kicks in when a court has "actually and necessarily determined" the "same issue" in a prior case, *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992), that doctrine plainly erects no barrier here, where the prior

_____

since even assuming Captain Hight's count is accurate, there is no question that he completed only two, one-way trips on the St. Lawrence River after becoming a Deputy Pilot—a fact this Court finds dispositive on the training requirement.

court not only left the training issue undecided, but expressly left it open.

For his part, Captain Hight acknowledges the distinction between the minimum trips requirement of Section 401.220(b)(1) and the training requirement of Section 401.220(b)(2). He nevertheless contends that the Coast Guard's invocation of incomplete river training is merely an attempt "under a different label" to "resuscitate its prior interpretation of the minimum trips requirement," which is collaterally estopped by *Hight I.* Pl.'s Mot. 17. Saying so does not make it so, however. Directors Emerson and Haviland were both unmistakable in identifying Captain Hight's trouble as a failure to complete his SLSPA-provided training, AR 48, 960—specifically, a failure "to continue his supervised training on the Saint Lawrence River" once he attained Deputy Pilot status, AR 961. Again, *Hight I*—which addressed only Section 401.220(b)(1), and only in a limited way—has nothing to say about this separate obligation.

Nor does *claim* preclusion, which bars the litigation of issues that "could have been raised in" an earlier suit, foreclose the Coast Guard's rationale here. *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). On this front, Captain Hight insists the defendants in *Hight I* should have brought to Judge Mehta's attention all possible reasons the Coast Guard had for denying Captain Hight's registration, including incomplete training under Section 401.220(b)(2). But as defendants correctly respond, "it would have been improper for the government to urge the *Hight I* Court to affirm based on an alternative argument that the Coast Guard did not address in the administrative decision being reviewed." Defs.' Reply 3. Indeed, the Coast Guard expressly declined in its first decision to resolve whether Captain Hight's trips complied

15

with the SLSPA's training plan, instead relying on its interpretation of the minimum trips requirement to deny Captain Hight's request to sit for the exam.  AR 458.  Because "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)), the defendants in *Hight I* had no legitimate footing to raise the issues or arguments they now introduce.  *See also U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 n.21 (D.C. Cir. 1985) (claim preclusion does not bar a party from raising issues that "would have been utterly impracticable to [raise] at that time").

At any rate, the causes of action asserted in this case are, for the most part, different from those in *Hight I.*  The first case was concerned with whether Captain Hight could sit for the pilotage exam, and his related allegation that the Coast Guard erred when it refused to administer the exam based on a misreading of the minimum trips requirement and lack of endorsement from the SLSPA.  *See Hight I*, 533 F. Supp. 3d at 27.  "In marked contrast, the bulk of [the current case] attacks the agency's *subsequent* determination" that Captain Hight, upon completing the exam, does not meet the other qualifications for registration. *Drake*, 291 F.3d at 66.  "Plainly, then, the claims underlying [this action] are based on a different nucleus of facts than were those advanced in [*Hight I*]," including the critical fact of a different agency action.  *Id.*; *cf. Roberson v. Fed. Bureau of Investigation*, 2022 WL 6437284, at *3 (D.D.C. Oct. 10, 2022) (despite "similar causes of action" involved in two lawsuits, declining to find claim preclusion where the lawsuits "challenge different agency determinations, and the current lawsuit challenges a determination that had not yet been made at the time of the first lawsuit").

**B.    The denial of Captain Hight's registration based on incomplete training is not arbitrary or capricious.**

Captain Hight alternatively argues that, if not precluded, the Coast Guard's denial of registration based on incomplete training must be set aside under the APA. He posits that this decision "is a textbook instance of arbitrary and capricious decision-making" because Captain Hight *did* complete his training, despite what the Coast Guard and SLSPA claim. Pl.'s Mot. 20. In any event, he says, even if the Coast Guard believes otherwise, it cannot treat Captain Hight differently from other SLSPA trainees, who "all received their [full] pilot registration having completed the same river training as Captain Hight." *Id.*

Captain Hight offers no basis for his second assertion besides his own, albeit sworn, "belie[f]," AR 816–818—a belief he quickly undermines by describing the experience of a fellow trainee who "had approximately the same number of river trips" as Captain Hight at the time he took the exam, but who was "made [to] take more river trips" before he could be registered, AR 818–821. And Captain Hight's first assertion seems untrue. In Director Emerson's words, the Coast Guard and SLSPA "have always maintained that Captain Hight did not complete the Association's Coast Guard approved training plan, specifically for the designated waters of the Saint Lawrence River." AR 960. The record supports the agency's and association's consistent position on this score. *See, e.g.*, AR 606–608 (email from the SLSPA to Coast Guard describing Captain Hight's "[i]nsufficient River Trips as per requirements of the Training Plan for a Deputy Pilot"); *see also* AR 548–549, 562–563, 583, 596. So, too, does the SLSPA's written training program, which confirms that trainees are expected to continue making supervised trips on the St. Lawrence River, even

in the Deputy Pilot phase.  AR 468–469.  The program is also clear that, for a trip to count toward this training requirement, it must be observed and evaluated by a registered pilot. AR 469.

Here, Captain Hight shows two, one-way trips on the St. Lawrence River in the 22 months after May 2016, when he attained Deputy Pilot status; only one of those trips was observed by a supervising pilot and therefore qualifies under the program.  AR 598. Captain Hight otherwise spent his time as a Deputy Pilot providing solo services on Lake Ontario, making almost 200 trips in those waters as well as the income that came with them.  AR 531.  For the Coast Guard to examine these facts and conclude, as it did, that Captain Hight neither completed the SLSPA's training plan, nor otherwise "demonstrate[d] the proficiency and expertise required to safely solo pilot vessels through [the] challenging and dangerous designated waters" of the St. Lawrence River, is surely not unreasonable. AR 963.  To the contrary, Director Emerson's decision is exactly the kind of agency action "in … regard to maritime safety" to which "'a great deal of deference is owed.'"  *Am. Great Lakes Ports Ass'n v. Zukunft*, 296 F. Supp. 3d 27, 43 (quoting *Pub. Emps. for Env't Resp. v. Beaudreau*, 25 F. Supp. 3d 67, 100 (D.D.C. 2014)).  It carefully compares Captain Hight's limited river experience with the specialized skills and knowledge required for safe pilotage on the St. Lawrence River, and ultimately declines to depart from the SLSPA's standard training in this respect.  AR 960–962.  Especially given the "narrow" "scope of review under the arbitrary and capricious standard," *State Farm*, 463 U.S. at 50, Captain Hight offers no good reason to overturn the Coast Guard's judgment, and indeed, I see none.

In a parting shot, Captain Hight insists the Coast Guard's denial is particularly unfair to him because the agency never states which training requirements he did not meet.  He speculates that the Coast Guard's "discussion of the St. Lawrence River indicates that it is referring to the 'minimum trips' requirement that was at issue in *Hight I*," Pl.'s Mot. 20, since the SLSPA's training program "says nothing about additional river trips" beyond that regulatory requirement, Pl.'s Opp'n to SLSPA's Mot. 4.  *See also* SAC ¶ 269 (surmising that "additional trips cannot be required or that would entirely negate the Minimum Trips Requirement").  But for one thing, the training program has a lot to say about additional river trips on top of the minimum requirement.  *See, e.g.*, AR 467 (requiring "at least four (4) round trips into and out of" Ogdensburg, NY, which is located on the St. Lawrence River); AR 467 (requiring "at least one (1) trip (with no time limit) into" Morrisburg, ON, also located on the St. Lawrence River).  The Coast Guard even "re-emphasize[d]" this point in an email to Captain Hight, explaining "that the five transits [in Section 401.220(b)(1)] is a *minimum* standard.  A pilot association … can require more trips for an applicant trainee to qualify[.]"  AR 602–603 (emphasis added).

More to the point, Captain Hight is wrong to suggest that the Coast Guard's decision is unclear about which training he failed to complete.  Regardless of what the parties now argue,[4] the Coast Guard's determination is plain:  Director Emerson denied registration for

---

[4] Before this Court, the Coast Guard appears to argue that it denied registration for Captain Hight because he failed to meet the minimum trips requirement of Section 401.220(b)(1).  That is not correct.  Directors Emerson and Haviland were plain as day in identifying the problem as Captain Hight's failure to complete the SLSPA's training program under Section 401.220(b)(2).  AR 48, 960.  The Coast Guard's change of course in this litigation, however, does not alter the outcome here, nor does it undermine the Coast Guard's reasonable explanation at the agency level.  After all, "agency action must stand and fall on

Captain Hight based on his failure to continue making supervised trips on the St. Lawrence River after obtaining a "deputy license" to provide solo pilotage services on Lake Ontario. AR 961; *see, e.g., id.* ("While Captain Hight focused on maximizing time on Lake Ontario and the income he could earn while in training, he neglected his responsibility to continue his supervised training on the Saint Lawrence River, which was necessary to complete the training plan."); AR 965 ("Captain Hight had two full shipping seasons [after becoming Deputy Pilot] to demonstrate the skills … to pilot vessels in complex waterways and often adverse conditions. Instead, he focused on maximizing his own income at the expense of completing his training."). To be sure, the decision does not specify precisely how many trips a Deputy Pilot must make on the St. Lawrence River to demonstrate proficiency in those waters. *See* AR 607–608 (SLSPA stating "a requirement of 4 round trips per season" on the St. Lawrence River "in the two-season Deputy Pilot Training phase of the Training Plan"); AR 591 (SLSPA suggesting a requirement of five round trips on St. Lawrence River during the final year before registration). But whatever the number, it is certainly greater than Captain Hight's single, qualifying one-way trip in the nearly two years he spent as a Deputy Pilot. Facing a lapse that obvious, the Coast Guard was not unreasonable in declining to put too fine a point on it.[5]

---

the reasoning in the decision under review—not after-the-fact justifications conceived in litigation." *Jurewicz v. U.S. Dep't of Agric.*, 891 F. Supp. 2d 147, 156 (D.D.C. 2012).

[5] "When an agency offers multiple grounds for a decision," a court will typically "affirm the agency so long as any one of the grounds is valid." *BDPCS, Inc. v. F.C.C.*, 351 F.3d 1177, 1183 (D.C. Cir. 2003); *see* 5 U.S.C. § 706 (instructing APA courts to account for "the rule of prejudicial error"). In this case, however, given that several of Captain Hight's constitutional objections are bound up with his overall APA challenge, I find it prudent to address each of the three grounds for the Coast Guard's denial, regardless of whether any one of them independently renders the agency's decision lawful. *Compare Shinseki v. Sanders*,

## II.   The SLSPA's Recommendation (Claims II, III, V–VIII)

Captain Hight next objects to the Coast Guard's reliance on the SLSPA's negative recommendation to deny him registration.  Resurrecting a version of his earlier preclusion argument, he first asserts that *Hight I* already decided the question of whether he needs the SLSPA's endorsement before he can be registered as a pilot.  According to Captain Hight, Judge Mehta answered that question in the negative when he resolved that, "in this specific case, Plaintiff is entitled to summary judgment … because the Federal Defendants failed to respond to his argument" on the topic.  *Hight I*, 533 F. Supp. 3d at 30.  At any rate, he maintains, "[t]he plain text of the regulation[s] does not require a positive recommendation from the Association as a prerequisite to registration."  Pl.'s Mot. 24.  The Coast Guard therefore erred in refusing him registration based on the SLSPA's negative say-so, or so Captain Hight concludes.

This time, Captain Hight's issue preclusion argument may be correct.  He may also be correct that the regulations do not demand a positive recommendation from the relevant association as a condition of registration.  But I need not (and do not) decide this question of regulatory interpretation, because Captain Hight's argument on this front is a straw man!  The parties unequivocally agree that the Coast Guard is not barred from at least *considering* an association's recommendation, be it positive or negative, in deciding whether to register a pilot.  *See* Pl.'s Mot. 24–25.  Section 401.220(d) contemplates at least that much when it

---

556 U.S. 396, 406 (2009) ("[T]he APA's reference to 'prejudicial error' is intended to sum up … the 'harmless error' rule[.]" (internal quotation marks and brackets omitted)), *with* Daniel Epps, *Harmless Errors and Substantial Rights*, 131 Harv. L. Rev. 2117, 2119 (2018) ("Judges and commentators sharply disagree about which (and even whether) constitutional errors can be harmless[.]").

provides that a pilot's registration is "[s]ubject to" different regulatory requirements, 46 C.F.R. § 401.220(d), including, in Section 401.220(c), the requirement that the pilotage association furnish the Coast Guard with a written recommendation for each pilot seeking registration.  And that is exactly how things played out here:  The SLSPA submitted its recommendation as required by paragraph (c), the Coast Guard considered the recommendation as intended by paragraph (d), and "subject to" that recommendation—plus several other factors—registration for Captain Hight was denied.  Director Emerson's decision never said that a positive recommendation was mandatory for pilot registration, nor did the Coast Guard ever suggest that its denial in Captain Hight's case was solely attributable to the SLSPA's negative assessment.  So whether Captain Hight *must* receive the SLSPA's endorsement, or whether Judge Mehta already resolved that issue in his favor, is quite beside the point.

Recognizing this, Captain Hight tries another tactic several pages down.  He argues that, while the regulations may allow the Coast Guard to *consider* a recommendation, the agency must still exercise its own, independent judgment in adjudicating a request for pilot registration.  In Captain Hight's case, however, "the Coast Guard defer[red] to the Association completely," Pl.'s Opp'n to Defs.' Mot. 17, and in so doing, delegated regulatory power over one private party to another private party in violation of due process and the separation of powers.  Yet this argument, too, stumbles out of the blocks.  The record shows that the Coast Guard *did* exercise its own judgment in denying registration for Captain Hight; the fact that it ultimately agreed with the SLSPA's recommendation is no evidence to the contrary.  In fact, most of the correspondence to which Captain Hight

cites for his position shows, *not* that the Coast Guard "treat[ed] the Association's recommendations as conclusive," Pl.'s Mot. 30, but that it repeatedly sought to corroborate the SLSPA's conclusions with independent proof, including with Captain Hight's own records and accounts. *See, e.g.*, AR 537 (explaining that the Coast Guard is "reviewing your input as well as the input from the pilot association"); AR 562–563 (describing "the process of gathering facts and evaluating its veracity" and concluding that "[i]f I am in error, and you can demonstrate, with records, that you have completed all of your training, I will reconsider my position"); AR 583 ("If you have signed records of your trips …, please send them to me[.]"). To say the least, these are not the actions of an agency that simply "[r]ubber-stamp[s] the decisions" of a private entity without any attempt at its own investigation. Pl.'s Mot. 29.

Equally telling, almost all of Captain Hight's "extensive record evidence" of the Coast Guard's purported delegation predates *Hight I.* Pl.'s Opp'n to Defs.' Mot. 16. He points to *nothing* in the decision currently under review or the decision-making process leading up to it that suggests the Coast Guard treated the SLSPA's recommendation as dispositive, much less "defer[red] to [the SLSPA] across the board." *Id.* To the contrary, Director Haviland flatly stated that he "would deny [Captain Hight's registration] request *even with* a positive endorsement" from the SLSPA, AR 50 (emphasis added)—as clear a sign as any that the Coast Guard, not SLSPA, was the one running the show. And Director Emerson pointedly recognized that, while it was well within the Coast Guard's prerogative to "*consider*[] the SLSPA's recommendation," AR 963 (emphasis added), it supplied only one of many reasons for denying registration here, AR 960. In short, the Directors'

determinations bear all the hallmarks of independent, reasoned judgment, leaving Captain

Hight's non-delegation claims to wither on the vine.

## III.   Captain Hight's Temperament (Claims V–VIII)

Lastly, Captain Hight vigorously disputes the Coast Guard's reliance on his alleged

"bad temperament" as a separate ground for refusing registration.  While he acknowledges,

as he must, that the regulations entitle the agency to account for temperament in making

registration decisions, 46 C.F.R. § 401.210(3), Captain Hight asserts that the Coast Guard

offers no "reasoned basis, grounded in substantial evidence, for finding that Captain Hight

*himself* lacks the necessary temperament to be a pilot," Pl.'s Opp'n to Defs.' Mot. 11–12

(emphasis added).  He specifically faults the agency for crediting others' versions of events

over Captain Hight's with respect to the various incidents cited, suggesting that, if Captain

Hight's narrative were believed instead, none of these incidents would be considered grave

enough to warrant the denial of his registration.  But this argument overlooks that fact that

a "reviewing court may not reweigh the evidence presented to it, nor may it replace the

[agency]'s judgment concerning the credibility of the evidence with its own."  *Crosson v.

Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  To the contrary, the APA's substantial evidence

standard erects a "low bar."  *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20

F.4th 1, 7 (D.C. Cir. 2021).  "Substantial evidence is lacking if, considering the record as

a whole, no reasonable factfinder could have made the same finding as the agency."

*Finberg v. U.S. Dep't of Agric.*, 6 F.4th 1332, 1336 (D.C. Cir. 2021).

Here, the Coast Guard cites numerous examples of what it believes shows poor

temperament on Captain Hight's part.  These include the episode on the bridge of the

Federal Hudson in which Captain Hight "raised [his] voice" and cursed in an argument with the vessel's Master, AR 809—a description of the incident to which all parties apparently agree.  They also include Captain Hight's failure to report the tug accident, which—as Captain Hight already recognized, AR 530—he should have disclosed as soon as he heard the tug had sustained damage.  Under the substantial evidence standard, these two incidents alone, even crediting Captain Hight's version of them, are likely enough on which to sustain the Coast Guard's conclusion that Captain Hight has "demonstrated a temperament inconsistent with the professionalism necessary to reduce risk to the vessel and environment."  AR 965.  This is especially true given the "great deal of deference ... owed to the 'Coast Guard's expertise in maritime safety,'" which tips the scales even deeper in the Coast Guard's favor here.  *Pub. Emps. for Env't Resp.*, 25 F. Supp. 3d at 100 (ellipses omitted) (quoting *Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1253 (D.C. Cir. 2003)).  Yet the record contains still other incidents that reveal, in the Coast Guard's estimation, that Captain Hight's temperament is ill-suited to the job he seeks, including his several "[m]isrepresentations" in a court proceeding, as referenced by Director Haviland, AR 49–50, as well as his "antagonistic and aggressive" emails to Coast Guard staff and Admiral Nadeau, as referenced by Director Emerson, AR 965.[6]  Especially when these

---

[6]  The cited "[m]isrepresentations" arose in a September 2020 federal court proceeding in which Captain Hight provided expert testimony.  As explained by Director Haviland, Captain Hight "deliberately" omitted the 2017 tug accident from the résumé he submitted to the court, instead claiming that he had served as "a registered Great Lakes pilot-without incident-from 2015 to 2018."  AR 49.  Captain Hight additionally claimed to have "an unblemished record as a professional mariner," despite the fact that he was relieved of his command of a vessel in 2012 "due to a lack of confidence" by the vessel's management—a fact he also failed to disclose to the SLSPA when he applied to be a District One pilot.  AR 49.  Finally, Captain Hight represented on his résumé that he was a "retired" Lieutenant Commander in the U.S. Naval Reserve, when it was later revealed that he did not have sufficient years of creditable service to receive a retirement pension

incidents are viewed together, I cannot say that "no reasonable factfinder" would agree with the Coast Guard's judgment on this score. *Finberg*, 6 F.4th at 1336.

Undaunted, Captain Hight fires one final arrow from his quiver by returning to his theory of unconstitutional delegation. *See supra* at 22–24. He posits that the Coast Guard's failure to conduct its own investigation into these incidents—particularly his argument with the Federal Hudson's Master—is yet another example of how the agency has delegated its decision-making power to the SLSPA. In Captain Hight's telling, the Coast Guard simply "accept[ed] whatever factual narrative the Association provide[d]" about the incidents and refused to give him the chance to contest that narrative. Pl.'s Mot. 31. Yet Captain Hight had, and took, multiple opportunities to present his own versions of events. AR 414–418, 424–435, 529–532. The fact that the Coast Guard clearly did not find Captain Hight credible—given what Director Haviland termed his "lack of integrity and judgement" based on various "[m]isrepresentations," "intentional[] misstate[ments]," and "withheld information," AR 49–50; *see also supra* note 6—does not translate into a failure by the agency to exercise its own judgment. Quite the opposite: The Coast Guard evaluated the accounts before it and ultimately concluded that it was not willing to jeopardize maritime safety by registering a pilot whose temperament, in the agency's experience, increases "risk to the vessel and environment." AR 965. Nor will I disturb the agency's well-reasoned judgment!

---

from the Navy; that he was, in reality, discharged; and that he "never actually served a single day in uniform performing duties as an officer in the Naval Reserve." AR 50. In the federal proceeding, Captain Hight maintained that the difference between "retirement" and "discharge" was just "semantics." AR 115.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [Dkt. #28] is **DENIED**, and the SLSPA's and defendants' cross-motions for summary judgment [Dkt. ##31, 32] are **GRANTED**.  An order consistent with this Memorandum Opinion will issue on this date.

RICHARD J. LEON
United States District Judge